**In re WESTPORT SQUARE, LTD., Debtor.**

Bankruptcy No. 89–40886–3–11–FWK.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 15, 1989.

Gene A. DeLeve, Berman, DeLeve, Kuchan & Chapman, Robert A. Pummill, Barker, Rubin & Sonnich, Kansas City, Mo., for Westport Square, Ltd.

Erlene Krigel, Kansas City, Mo., Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor converted from Chapter 11 to Chapter 7. The Court authorized the lift of stay on the inventory and equipment but directed that any sale of said assets be subject to the approval of this Court. The debtor's name is Westport Square, Ltd. and the involved creditor's name is Westport, Ltd., so the generic terms will be used to ease identification.

Creditor owned the real estate where debtor conducted a restaurant business. Debtor, well before bankruptcy, was behind on its rent to creditor and executed a promissory note for its delinquency. It secured the note with a security agreement on all of its equipment, accounts receivable, inventory, etc. Subsequently, and just before bankruptcy, debtor either surrendered the premises or creditor locked debtor out. The Honorable Dennis J. Stewart reinstated debtor's possession, but required debtor to make certain payments as adequate protection. When debtor was unable to make the payments, the conversion to Chapter 7 and the lift of stay followed.

Counsel for creditor immediately sent the notice of sale to debtor (5 days notice by certified mail) that was specified in the security agreement. Notice of the sale was posted on the front door of debtor's place of business. Notice of the sale was advertised one time in the Kansas City Star. The sale drew a crowd of some 40 bodies, at least two or three of whom were bidders. However, the only party who actually bid on the equipment and fittings was the creditor. It bid some $52,000.00, same apparently being its debt, interest and costs on the aforesaid promissory note. Creditor and the Chapter 7 Trustee had previously sold the perishable foodstuffs after soliciting bids, therefor. Creditor bid more for same than any of the other local restaurants would offer. There is no complaint about that part of the sale. In June of 1989, some five months before the sale, Cable Car Auction had appraised the property at $43,000.00. Further debtor in its

Bankruptcy schedules had valued the collateral at $50,000.00.

The debtor and the debtor's Trustee complained that the sale was not commercially reasonable and was chilled by the fact that creditor had arranged a "sham" lease with another corporation and would not negotiate a lease with the interested bidders other than one comparable to that which it signed contingently with a newly formed corporation owned by Mr. Richardson. Mr. Richardson is a C.P.A., owns several companies, and is also the C.P.A. for the creditor.

The contingent lease provided for a continuation of the rent of 7% of sales with a minimum guarantee of $7,500.00 per month until April of 1990, and then a minimum guarantee of $15,000.00 per month with the same rental of 7% of sales. In addition the lessee agreed to deposit $37,500.00, same covering the first and last two months rent. Debtor and the Trustee suggest that this is not truly a valid lease but offered no proof thereof. Both Mr. Maxwell and Mr. Richardson, principals in the lessor and lessee respectively, testified this was a valid lease and not a sham.

The Court believes that it lacks the power to force creditor to negotiate a lease for the real estate. Debtor's lease was terminated by operation of 11 U.S.C. § 365(d)(1) and (4) and there was no leasehold interest that debtor or the Trustee could assign. A landlord can negotiate the best possible lease for such terms as it chooses and for this Court to refuse approval of a sale that did not include a lease of the realty would amount to an unwarranted usurpation of power. It seems to the Court that the 1984 amendments relating to the time frame for acceptance or rejection of leases of non-residential real estate mandate such a conclusion. Thus, the question for the Court is whether the sale of the tangible personal property was commercially reasonable or not, just as it occurred.

The Court believes that it was. The notice was short but conformed to the contractual terms. Also the sale was advertised in the daily newspaper albeit only once. Also notice of the sale was posted on the premises and testimony indicated the major dealers were contacted telephonically. Acquisition by the secured party at a foreclosure sale always raises a question but the Uniform Commercial Code specifically provides that the secured party may buy at a public sale. Section 400.9–504, Mo.R.S. sets the rules for disposition of collateral and the creditor conformed thereto.

Based on the evidence presented, the Court concludes that the sale was commercially reasonable. Creditor's Motion To Confirm the sale is GRANTED. Debtor's Motion To Reconsider Stay Motion and the Trustee's Objection To The Sale are both DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.